**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

OLAWOYIN PETER OLAREWAJU,

                Petitioner,

    v.

CRAIG A. LOWE, et al.,

                Respondents.

CIVIL ACTION NO. 3:26-CV-00631

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Olawoyin Peter Olarewaju ("Olarewaju"), a Nigerian citizen seeking adjustment of immigration status in the United States, brings this petition for writ of habeas corpus. (Doc. 1). On March 13, 2026, Olarewaju filed the instant petition, requesting that the Court order his release from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania or that Respondents Craig A. Lowe and John E. Rife[1] provide a bond hearing

---

[1] The proper respondent in this case is Craig A. Lowe ("Lowe"), Warden of the Pike County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Olarewaju is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, John E. Rife is **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Olarewaju on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

pursuant to *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020). (Doc. 1, at 3). The government filed a timely response to Olarewaju's petition on March 23, 2026 (Doc. 4), and on March 30, 2026, Olarewaju filed a traverse. (Doc. 6). For the following reasons, Olarewaju's petition (Doc. 1) is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Olarewaju's petition, the government's response, and the exhibits thereto. (Doc. 1; Doc. 4). Olarewaju is a citizen of Nigeria, who entered the United States in 2016 on a B-2 visitor visa. (Doc. 1, at 2). Olarewaju has an approved Form I-360, Petition for Amerasian, Widower, or Special Immigrant, and he applied for adjustment of status with the immigration court. (Doc. 1, at 5). On May 23, 2023, Olarewaju plead guilty to conspiracy to commit bank fraud in the Southern District of New York. (Doc. 1, at 2). On March 3, 2025, following Olarewaju's sentence in federal custody, ICE arrested Olarewaju pursuant to 8 U.S.C. § 1226(c) and transferred him to custody at the Pike County Correctional Facility, where he remains detained. (Doc. 1, at 2). The government asserts without support that on March 24, 2025, an immigration judge denied Olarewaju bond because of lack of jurisdiction, and Olarewaju waived appeal of the immigration judge's order denying bond. (Doc. 4, at 1-2).

On May 21, 2025, an immigration judge ordered Olarewaju's removal. (Doc. 4, at 4). The Board of Immigration Appeals ("BIA") dismissed Olarewaju's appeal of the immigration judge's decision on March 19, 2026. (Doc. 4, at 5). Since filing the instant petition, Olarewaju filed a petition for review of the immigration judge's order and the BIA's dismissal with the Third Circuit Court of Appeals. (Doc. 6, at 2). Olarewaju has remained in immigration detention for over one year throughout his removal proceedings. (Doc. 1, at 6).

2

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing if it determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the Due Process Clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

## III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v.*

3

*Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil*, 164 F.4th at 277-79 (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil*, 164 F.4th at 278-79 (finding that length of confinement without a bond hearing claim "does not get channeled into the PFR review process"). Olarewaju's petition is soundly before the Court as Olarewaju filed the instant petition while detained within the jurisdiction of this Court, is still currently detained by ICE, and asserts that his continued detention violates due process. *See J. G. G.*, 604 U.S. at 672 (acknowledging that immigration-related detainees' claims "fall within the

4

'core' of the writ of habeas corpus") (quoting *Nance*, 597 U.S. at 167); *see also Kahlil,* 164 F.4th at 274-79.

## IV.   DISCUSSION

Olarewaju requests that the Court release him from custody at the Pike County Correctional Facility or that the government provide him with a bond hearing. (Doc. 1). Olarewaju contends that his prolonged mandatory detention under 8 U.S.C. § 1226(c) violates the Due Process Clause of the Fifth Amendment. (Doc. 1, at 12-13). Olarewaju avers that his over twelve months of mandatory civil detention without bond is unreasonably prolonged and in violation of due process. (Doc. 1, at 11). Olarewaju contends that he is entitled to immediate release or, in the alternative, a prompt bond hearing, at which the government bears the burden to show that continued detention is justified. (Doc. 1, at 11). The government counters that Olarewaju's detention does not violate due process because it is pursuant to a mandatory detention provision of § 1226(c), and it has not been prolonged nor arbitrary. (Doc. 4, at 5). The government reasons that Olarewaju's detention is justified for the purpose of enacting his removal and preventing flight or danger to the community. (Doc. 4, at 10). The government avers that this justification continues for the full duration of the removal proceedings. (Doc. 4, at 10). The government also contends that Olarewaju is not entitled to relief because he asserts a substantive, not procedural, due process claim, which does not require a bond hearing. (Doc. 4, at 12-18).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,*

5

533 U.S. 678, 693 (2001). While it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings, the Supreme Court has recognized that detention during deportation proceedings is a constitutionally valid aspect of the deportation process. *Demore v. Kim*, 538 U.S. 510, 523 (2003). Detention of noncitizens pending their removal proceedings serves the purpose of preventing noncitizens from fleeing before or during the removal proceedings. *Demore*, 538 U.S. at 528. However, the Due Process Clause limits detention without a bond hearing to a "reasonable period." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 208 (3d Cir. 2020). Therefore, due process affords detained noncitizens a bond hearing once their detention becomes unreasonable. *Santos*, 965 F.3d at 211.

Olarewaju is detained pursuant to 8 U.S.C. 1226(c), which provides for the mandatory detention of, among others, noncitizens convicted of certain crimes. 8 U.S.C. § 1226(c). Section 1226(c) "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings*, 583 U.S. at 305. Although 8 U.S.C. § 1226(c) provides for mandatory detention and the Supreme Court has determined that "[d]etention during removal proceedings is a constitutionally permissible part of" the removal process, prolonged detention raises due process concerns. *Demore v. Kim*, 538 U.S. 510, 531 (2003); *Santos*, 965 F.3d at 210.

Section 1226(c) immigration detainees enjoy the basic due process right to an individualized bond determination once the length of their detention before removal has become unreasonable. *Santos*, 965 F.3d at 210-11. To determine whether a noncitizen's detention has become unreasonable, courts evaluate four factors established by the Third

6

Circuit in *Santos*: (1) the length of the detention; (2) whether the detention is likely to continue; (3) the reasons for any delay that prolongs detention; and (4) whether the noncitizen's conditions of confinement are meaningfully different from criminal punishment. 965 F.3d at 211.

The government's argument that Olarewaju's request for release or bond constitutes a substantive due process claim, under which he has no right to a bond hearing, is in contrast to Third Circuit precedent, which holds that unreasonably prolonged detention under 8 U.S.C. § 1226(c) violates due process and entitles an immigrant detainee to an individualized bond determination. *Santos*, 965 F.3d at 206; *see Michelin v. Warden Moshannon Valley Corr. Cntr.*, 169 F.4th 418, 433 (3d Cir. 2026). Olarewaju, a noncitizen detained pursuant to § 1226(c) for over a year without a bond hearing, falls squarely within the framework of *Santos*. 965 F.3d at 213 (finding petitioner's two and a half years of detention under § 1226(c) violated due process). Accordingly, the Court will evaluate each *Santos* factor to determine whether Olarewaju's detention has become unreasonable.

A. LENGTH OF DETENTION

Olarewaju contends that his over one year of continued civil imprisonment strongly supports a finding of unreasonable detention because it is longer than the six-month to one year timeframe reaffirmed in *Santos*. (Doc. 1, at 10). The government counters that while Olarewaju has been detained for over one year, his detention is directly tied to the adjudication of his removal proceedings. (Doc. 4, at 20).

The Third Circuit has identified the first *Santos* factor, duration of detention, as the "most important factor" in evaluating the reasonableness of a noncitizen's detention during removal proceedings. *Santos*, 965 F.3d at 211. While the Third Circuit has not adopted a

7

presumption of reasonableness or unreasonableness for any duration of detention, the Third Circuit has found that detention becomes increasingly suspect after five months. *Santos*, 965 F.3d at 211 (citing *Demore*, 538 U.S. at 515; *Diop v. ICE/Homeland Sec.,* 656 F.3d 221, 234 (3d Cir. 2011)); *Michelin*, 169 F.4th at 433-34 (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469 (3d Cir. 2015)) (re-affirming that detention without opportunity for bond becomes unreasonable between six months and one year after it began). Given that the inquiry is fact-specific, courts have reached different conclusions as to the length of detention that qualifies as reasonable or unreasonable. *See Malede v. Lowe*, No. 1:22-CV-01031, 2022 WL 3084304, at *5 (M.D. Pa. Aug. 3, 2022) (concluding that petitioner's "near 18-month detention has reached the tipping point when the length of the detention begins to weigh in favor of a bond hearing"); *see Davydov v. Doll*, No. 1:19-CV-2110, 2020 WL 969618, at *4 (M.D. Pa. Feb. 28, 2020) (concluding that a noncitizen who had been detained for over fourteen months was entitled to a bond hearing); *see also Crooks v. Lowe*, No. 1:18-CV-47, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018) (denying a bond hearing to a petitioner who had been detained for eighteen months because "his case ha[d] proceeded through the removal process at a reasonable pace and there [was] no indication on the record that the government ha[d] improperly or unreasonably delayed the proceedings"). Courts in the Third Circuit generally find that detention for well over a year is sufficient to amount to an arbitrary deprivation of liberty. *See Rodriguez-Castillo v. Lowe*, No. 1:19-cv-1000, 2020 WL 820154, at *3 (M.D. Pa. Feb. 19, 2020) (collecting cases); *see also Michelin*, 169 F.4th at 433-34.

Olarewaju has been continuously detained for over one year. (Doc. 1, at 6). Olarewaju's length of detention of over a year slightly favors a finding of unreasonable detention. *See Santos*, 965 F.3d at 211; *see Malede v. Lowe*, 2022 WL 3084304, at *5; *see*

8

*Rodriguez-Castillo*, 2020 WL 820154, at *3 (collecting cases); *see also Michelin*, 169 F.4th at 433-34. Even if the clock for length of detention started after the custody determination the government contends occurred on March 24, 2025, just over twelve months of detention is well over the Third Circuit's five-month tipping point. (Doc. 4, at 1-2); *Santos*, 965 F.3d at 211; *see Michelin*, 169 F.4th at 433-34. Accordingly, the first *Santos* factor, duration of detention, weighs slightly in favor of unreasonable detention.

> B.  LIKELIHOOD OF CONTINUED DETENTION

Olarewaju contends without relief from the Court, Olarewaju is likely to remain detained throughout the appeal of the immigration judge's decision on his adjustment of status claim. (Doc. 1, at 10). Olarewaju submits that he remains detained with no end in sight. (Doc. 1, at 10). The government avers that this factor relies on unhelpful hypothesizing of future events and improperly requires parties to argue the merits of their position at the administrative level. (Doc. 4, at 23). The government also submits that continued detention is unlikely given the BIA's denial of Olarewaju's appeal on March 19, 2026; however, since the filing of the government's response, Olarewaju filed a petition for review of the BIA's decision with the Third Circuit. (Doc. 4, at 23; Doc. 6, at 2).

When a noncitizen's removal proceedings are unlikely to end soon, continued detention without a bond hearing weighs towards a finding of unreasonable detention. *Santos*, 965 F.3d at 211. Courts in the Third Circuit have found that an immigration detainee filing a petition for review to the Third Circuit creates a likelihood of continued detention that favors granting habeas relief. *J.G.J. v. Sage*, No. 3:26-cv-706, 2026 WL 915576, at *10 (M.D. Pa. April 3, 2026) (citing *Joseph v. Warden*, No. 3:25-cv-02428, 2026 WL 497532, at *2 (M.D. Pa. Feb. 23, 2026)). Delays of an undefined duration then continue to accrue during

administrative proceedings that may be necessary following an appellate court decision. *Bah v. Doll*, No. 3:18-CV-1409, 2018 WL 6733959, at *8 (M.D. Pa. Oct. 16, 2018).

On March 30, 2026, the Third Circuit temporarily granted Olarewaju's motion to stay removal, pending full consideration and adjudication of the petition for review. (Doc. 6, at 2). With the Third Circuit's temporary stay of removal and review of the BIA's decision, Olarewaju's order of removal is not yet final, and he remains in pre-order of removal detention. 8 C.F.R. § 1241.1(c); *see J.G.J. v. Sage*, 2026 WL 915576, at *10 (finding no final order of removal exists with Third Circuit appeal of removal order pending). At this time, the undersigned cannot determine how long Olarewaju's removal proceedings will remain pending. However, as Olarewaju recently filed a petition for review of the BIA's decision with the Third Circuit, his detention is likely to continue during that review. *See Santos*, 965 F.3d at 212; *see also J.G.J. v. Sage*, 2026 WL 915576, at *10. As such, the second *Santos* factor weighs in favor of a finding of unreasonableness. *See Santos*, 965 F.3d at 212; *see Bah*, 2018 WL 6733959, at *8; *see also J.G.J. v. Sage*, 2026 WL 915576, at *10.

C.  REASONS FOR DELAYS

Olarewaju contends that the third Santos factor, reasons for delays, favors him or is neutral because he exercised his right to appeal the immigration judge's decision. (Doc. 1, at 10). The government contends Olarewaju's proceedings have moved forward at a normal rate for immigration detainees who contest their removability. (Doc. 4, at 23). The government also notes that during his detention, Olarewaju has had multiple individualized hearings on the merits of his removability and that he has pursued appeals of the immigration judge's removal determination. (Doc. 4, at 23).

In evaluating the third *Santos* factor, courts look at the reasons for the delay, such as a detainee's request for continuances or bad-faith errors in the removal proceedings that caused unnecessary delay. *Santos*, 965 F.3d at 211. Courts should not hold a noncitizen's good-faith challenge to removal against him, even when his appeals or petitions for review have drawn out the proceedings. *Santos*, 965 F.3d at 211. Courts should also decline to hold legal errors against the government unless there is evidence of carelessness or bad faith. *Santos*, 965 F.3d at 211. Nevertheless, detention can still grow unreasonable in the absence of governmental bad faith. *Santos*, 965 F.3d at 211.

While Olarewaju's removal proceedings have taken over a year, the government has not demonstrated carelessness or bad faith that would cause unnecessary delay. *See Santos*, 965 F.3d at 212 (citing *Diop*, 656 F.3d at 224-25) (finding unnecessary delay where an immigration judge repeatedly issued decisions that were so unclear that they required remands for clarification and the government was slow to produce evidence relevant to whether petitioner was properly detained). Likewise, Olarewaju's reasonable request for a complete record, appeal, and petition for review should not be held against him in evaluating the reasons for delay. *See Santos*, 965 F.3d at 211. Accordingly, the reasons for the delay of Olarewaju's removal proceedings are a neutral factor in weighing whether Olarewaju's detention is unreasonable.

D. CONDITIONS OF CONFINEMENT

Olarewaju contends that his confinement at the Pike County Correctional Facility is not meaningfully different from criminal punishment. (Doc. 1, at 10). Olarewaju reasons that Pike County Correctional Facility is a mixed population facility, that houses individuals in civil detention alongside individuals in criminal detention. (Doc. 1, at 10-11). The

government counters that Olarewaju's detention is not punitive. (Doc. 4, at 23-24). The government also notes that Olarewaju does not identify with specificity how his conditions of confinement are punitive or indistinguishable from criminal punishment. (Doc. 4, at 24). In response, Olarewaju submits that corrections officers at Pike County Correctional Facility treat civil detainees the same as criminal detainees and that lawsuits have been filed against offers at Pike County Correctional Facility alleging excessive use of force against immigrant detainees. (Doc. 6, at 9).

To evaluate the conditions of confinement, courts examine whether the noncitizen's conditions of confinement are "meaningfully different" from criminal punishment. *Santos*, 965 F.3d at 211. If a noncitizen's civil detention under § 1226(c) looks penal, that shifts the scale towards finding the detention unreasonable. *Santos*, 965 F.3d at 211. The Third Circuit has previously found that the conditions of civil confinement at the Pike County Correctional Facility are indistinguishable from criminal punishment. *Santos*, 965 F.3d at 212-13; *White v. Warden Pike Cnty. Corr. Facility*, No. 23-2872, 2024 WL 4164269, at *2 (3d Cir. Sept. 12, 2024). Accordingly, the Court finds Olarewaju's conditions of confinement to be indistinguishable from criminal punishment, weighing in favor of unreasonable detention.

## V.  CONCLUSION

Taking the four *Santos* factors together, Olarewaju's detention has become unreasonable and violates due process. Olarewaju's petition for writ of habeas corpus (Doc. 1) is **GRANTED**. The appropriate remedy is for Olarewaju to be afforded a bond hearing, in which the government bears the burden of proof to justify Olarewaju's detention with clear and convincing evidence. *Santos*, 965 F.3d at 213. The Court will conduct the individualized bond hearing as a habeas remedy, considering the risks of perpetuating constitutional injury

with continued delays. *See Centeno-Martinez v. Jamison*, No. 25-3593, 2025 WL 3157711, at *3 (M.D. Pa. 2025) (citing *Leslie v. Holder*, 865 F. Supp. 2d 627, 634-35 (M.D. Pa. 2012); *Thaxter v. Sabol*, No. 14-02413, 2016 WL 3077351, at *3 (M.D. Pa. June 1, 2016)) (finding district courts in the Third Circuit have exercised the authority to conduct bond hearings under habeas jurisdiction, particularly where there is a risk of further injury due to delay); *see also J.G.J. v. Sage*, 2026 WL 915576, at *11 n.19 (collecting cases) (noting the government acknowledged that district courts may conduct bond hearings in habeas corpus cases brought by immigration detainees). The Court **ORDERS** a bond hearing to be held before the undersigned on **THURSDAY APRIL 23, 2026 at 2:00 p.m.** in Courtroom #1 of the William J. Nealon Federal Building and United States Courthouse.

An appropriate Order follows.

**BY THE COURT:**

Dated: April 17, 2026                    */s/ Karoline Mehalchick*
                                          **KAROLINE MEHALCHICK**
                                          **United States District Judge**

13